# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**$200,255.00 IN UNITED STATES CURRENCY, MORE OR LESS,**

    Defendant.

Civil Action No. 7:05-cv-27(HL)

## ORDER

The Motion to Dismiss [Doc. 8] and Motion for Summary Judgment [Doc. 9] of Claimant Andres Ramirez are before the Court. After consideration, and as more fully explained below, the Court hereby denies both Motions.

**I.     FACTS**

The allegations of the Verified Complaint for Forfeiture, as supplemented by the affidavit of Drug Enforcement Agency ("DEA") Special Agent George C. Greco, attached thereto, are as follows:  During the afternoon of September 15, 2004, Claimant, Andres Ramirez, was driving a rented Mazda 626 on Interstate 75 in Lowndes County, Georgia. (Compl. ¶ 9; Greco Aff. ¶ 3.) Gladys Pedromo[1] was a passenger in the Mazda. (Compl. ¶ 9; Greco Aff. ¶ 4.) Deputy James Smith, of the Lowndes County Sheriff's Office, was operating speed detection

---

[1] In the complaint the passenger is identified as Gladys Perdomo; in the affidavit she is referred to as Gladys Pedromo. The Court will refer to the passenger as Gladys Pedromo for purposes of this Order.

radar at the location and clocked Ramirez traveling 87 miles-per-hour in a 70- mile-per-hour zone. (Compl. ¶ 9; Greco Aff. ¶ 3.) Smith then initiated a traffic stop of Ramirez's vehicle. (Compl. ¶ 9; Greco Aff. ¶ 3.)

During the traffic stop Smith asked Ramirez questions about his trip. According to the complaint, Ramirez told Smith that he and his wife, Pedromo, had flown to Chicago and stayed there four days; they were returning to West Palm Beach, Florida.[2] (Compl. ¶ 11.) Smith then asked similar questions of Pedromo. Pedromo indicated that she and Ramirez, her boyfriend, had driven to Chicago and were returning to Miami after a two-day stay. (Compl. ¶ 12; Greco Aff. ¶ 5.) Because of the conflicting accounts he received from Ramirez and Pedromo, Smith requested permission to search the vehicle. (Compl. ¶13; Greco Aff. ¶ 6.) According to Smith, Ramirez gave his permission for a search of the vehicle and voluntarily opened the trunk of the Mazda. (Compl. ¶ 13; Greco Aff. ¶ 6.) Inside the trunk, Smith observed a plastic bag and a black suitcase; inside the plastic bag and suitcase was $200,255.00 in United States currency.[3] (Compl. ¶ 13.) Further search of the vehicle revealed little clothing and no personal items. (Greco Aff. ¶ 7.)

---

[2] The affidavit of George C. Greco conflicts with the allegations of the complaint concerning the statements allegedly made by Ramirez. According to the affidavit, Ramirez told Smith he had flown to Chicago to meet his wife and they were traveling together from Chicago to Miami. (Greco Aff. ¶ 4.) Greco's affidavit does not suggest that Ramirez told Smith anything about the length of time he and Pedromo were in Chicago.

[3] The affidavit of George C. Greco states the events somewhat differently. According to the affidavit, after Ramirez opened the trunk, "Dep. Smith could see in plain view a suitcase opened with a large amount of currency wrapped in plastic." (Greco Aff. ¶ 6.)

2

After finding the currency in the trunk, Deputy Smith transported Ramirez and Pedromo to the Lowndes County Sheriff's office. During an interview, Ramirez told another Lowndes County Sheriff's Officer, Deputy Hightower, that he was an unlicensed real estate agent in Florida and that he carried his money with him wherever he traveled. (Greco. Aff. ¶ 8.) Greco later confirmed that Ramirez was not licensed to sell real estate in Florida. (Greco Aff. ¶ 12.) Greco also determined that Ramirez had no criminal history. (Greco Aff. ¶ 14.)

During the interview with Hightower, Ramirez stated that he flew to Chicago with the money, in Chicago he met his girlfriend, and they stayed in a motel in Chicago for three days. (Greco Aff. ¶ 8.) Pedromo, however, told Greco and Stanley Burris, of the Secret Service, that she drove with Ramirez to Chicago for a vacation, and they stayed one night in a hotel before returning. (Greco Aff. ¶ 11.) Pedromo stated that the currency belonged to Ramirez, who acquired the money selling real estate in Florida. (Greco Aff. ¶ 11.)

While the currency was at the Lowndes County Sheriff's Office, it was placed in the suitcase in an "open room." (Greco Aff. ¶ 9.) A drug detection dog was then brought into the room. (Greco Aff. ¶ 9.) According to Greco, the dog "showed no interest in anything in the room but the money retrieved from Ramirez's vehicle." (Greco Aff. ¶ 9.) The amount of money found in the suitcase totaled $200,255.00. (Greco Aff. ¶ 13.)

After interviewing Ramirez and Pedromo, Greco, acting on behalf of the DEA, took control of the case and seized the currency. Neither Ramirez nor Pedromo was arrested. The Government filed a Verified Complaint for Forfeiture on March 22, 2005. In lieu of filing an answer, Ramirez filed the Motions at issue here.

## II. ANALYSIS

### A. The Forfeiture Process

Congress substantially changed the civil forfeiture process with the enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). Codified, in part, at 18 U.S.C.A. §§ 981 and 983, CAFRA specifies, among other things, the manner in which an administrative agency may proceed with a nonjudicial civil forfeiture of seized property; the procedure a claimant must follow in order to seek the return of seized property; the process the Government must follow when a proper claim is made for the return of seized property; and the burden of proof imposed on the Government in order to accomplish a judicial civil forfeiture. The Motions under consideration here implicate these provisions of CAFRA.

Although CAFRA specifies the procedure to be followed when seeking to forfeit property, other federal statutes define what property is subject to forfeiture and when seizure is appropriate. Of particular relevance to this case is 21 U.S.C.A. § 881(a)(6), which makes the following property subject to forfeiture:

> All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this chapter.

21 U.S.C.A. § 881(a)(6) (West Supp. 2006). Section 881 further provides that "[a]ny property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 981(b) of Title 18." 21 U.S.C.A. § 881(b) (West Supp. 2006).

4

Section 981(b) of Title 18, in turn, provides that seizures must be made pursuant to a warrant or, if made without a warrant, at the time of the seizure there must be probable cause to believe the property is subject to forfeiture and the seizure must be made pursuant to a lawful arrest or search or pursuant to some other exception to the Fourth Amendment warrant requirement.  18 U.S.C.A. § 981(b)(2)(B) (West Supp. 2006).  Section 981(b) also allows for seizure without a warrant if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency."  18 U.S.C.A. § 981(b)(2)(C) (West Supp. 2006).

Once a valid seizure has taken place, the seizing agency is subject to the general rules for forfeiture proceedings set forth at 18 U.S.C.A. § 983.  More specifically, § 983 sets forth two notice deadlines for federal agencies that seize property under a civil forfeiture statute:  If the federal agency itself seizes the property, the agency must send written notice to interested parties not more than 60 days after the date of seizure.  18 U.S.C.A. § 983(a)(1)(A)(i)  (West Supp. 2006).  If the property is first seized by a State or local law enforcement agency and then turned over to a Federal law enforcement agency for the purpose of forfeiture, the required notice must be sent "not more than 90 days after the date of seizure by the State or local law enforcement agency."  18 U.S.C.A. § 983(a)(1)(A)(iv) (West Supp. 2006).

The general rules for civil forfeiture proceedings set forth at § 983 also govern the procedures for claiming property that has been seized.  The relevant provision for purposes of the Motions here states as follows:  "Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate

5

official after the seizure." 18 U.S.C.A. § 983(a)(2)(A) (West Supp. 2006). The statute further details the time within which the claim must be filed, as well as the required contents for a claim. 18 U.S.C.A. § 983(a)(2)(B) & (C) (West Supp. 2006).

If the seizing agency complies with the requirements for pursuing nonjudicial forfeiture and no claim is made, the property is summarily forfeited to the Government. However, the filing of a claim to the seized property ends the nonjudicial process and obligates the Government to begin the judicial forfeiture process. In that regard, § 983 directs: "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint . . . ." 18 U.S.C.A. § 983(a)(3)(A) (West Supp. 2006). If the Government fails to comply with the foregoing provision, it must release the seized property. 18 U.S.C.A. § 983(a)(3)(B) (West Supp. 2006).

Once the judicial forfeiture process is properly initiated, § 983 provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C.A. § 983(a)(3)(D) (West Supp. 2006). In addition, § 983 specifies the burden of proof that is placed on the Government in a civil judicial forfeiture proceeding:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property–
>
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;

>   (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
>
>   (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C.A. § 983(c) (West Supp. 2006).

In these Motions, Ramirez challenges the legality of the search of his vehicle and subsequent seizure of his currency; the Government's showing as to a connection between the currency and criminal activity; and the timeliness of the filing of the Government's judicial forfeiture complaint. The Court will address each of these challenges below.

### B.  Motion for Summary Judgment

As a threshold matter, in his Motion for Summary Judgment, Ramirez contends the Government has failed to comply with the directives of § 983 because it failed to file the judicial forfeiture complaint within 90 days of his submission of a verified claim. Ramirez maintains, therefore, that the forfeiture complaint should be stricken and that the currency seized from him should be returned.

#### 1.   Additional Findings

In order to make a determination as to Ramirez's Motion for Summary Judgment, the Court makes the following additional findings, construing the evidence in the light most favorable to the Government, as the nonmoving party:

On September 16, 2004, Agent Greco, acting on behalf of the DEA, elected to take control of the case and seized the currency.[4] On September 17, 2004, Ramirez retained an attorney, Juan D. Berrio. On that same day, Berrio contacted Greco to advise him that he was handling the case on behalf of Ramirez. Berrio also faxed to Greco a notice of claim to the seized money. The same notice of claim was also mailed to Greco and was received in the DEA office in Macon, Georgia, on September 22, 2004.

On December 1, 2004, DEA forfeiture counsel in Quantico, Virginia, sent a notice of seizure to Berrio. The notice specified the procedure for moving for return of the currency. Among other things, the notice specified that a verified claim had to be filed with the DEA forfeiture counsel in Quantico. In response to the notice received from the DEA, Berrio wrote to the DEA forfeiture counsel in Quantico and advised them that a claim to the currency had been submitted in September. Berrio enclosed with his letter, which was dated December 22, 2004, copies of the claim forms that had previously been faxed and mailed to Greco.

In a letter stamped with the date of January 24, 2005, the DEA notified Berrio that it did not consider the claim submitted on September 17, 2004, to be a valid claim, but that it was accepting the documents submitted on December 22, 2004, as a valid claim. According to the DEA, it had 90 days from the date of receipt of the letter, December 27, 2004, in which to file a complaint. The Government filed a Verified Complaint for Forfeiture on March 22, 2005.

---

[4] According to Ramirez, he and Pedromo were stopped by Smith on September 15, 2004, but interviewed by Greco and Burris on September 16, 2004. (Mot. Summ. J. at 2.) The Government does not dispute the dates used by Ramirez in his Motion. (Resp. Mot. Summ. J. at 1.) Therefore, the Court will assume the DEA took possession of the case on September 16, 2004.

**2.     Analysis**

Ramirez contends that his submission of a claim form to Agent Greco on September 17, 2004, started the 90-day clock for the Government's filing of a civil judicial forfeiture complaint pursuant to 18 U.S.C.A. § 983(a)(3)(A).  While Ramirez's argument has superficial appeal, the Court is of the opinion that Ramirez's position fails to consider § 983 in context and when the applicable provisions are considered within the context of the entire statute, his Motion for Summary Judgment must be denied.

Section 983(a)(1) details the notice procedure that must be followed after an agency has seized property for civil forfeiture.  First, under the statute, the seizing authority has either 60 or 90 days within which to provide notice; in the absence of timely notice, the seizing agency must return the seized property.  18 U.S.C.A. § 983(a)(1)(F) (West Supp. 2006).  The statute thus contemplates an opportunity for the seizing agency to process and evaluate the seized property before being obliged to act upon it.  In addition, § 983(a)(1) gives the Government the option to immediately proceed against the seized property in a judicial forfeiture proceeding, rather than first pursuing a nonjudicial forfeiture proceeding.  18 U.S.C.A. § 983(a)(1)(A)(ii) (West Supp. 2006).  In the event the Government elects to immediately proceed with a judicial forfeiture complaint, no notice of a nonjudicial civil forfeiture proceeding is required.  18 U.S.C.A. § 983(a)(1)(A)(ii) (West Supp. 2006).

While § 983(a)(1) directs the Government's conduct following a seizure, § 983(a)(2) details the procedure a claimant must follow in seeking the return of seized property.  The precise language of § 983(a)(2)(A) is as follows: "Any person claiming property seized in a

9

*nonjudicial civil forfeiture proceeding* under a civil forfeiture statute may file a claim with the *appropriate official* after the seizure." 18 U.S.C.A. § 983(a)(2)(A) (West Supp. 2006) (emphasis added). Subsections (B) through (E) of § 983(a)(2) detail the procedure that must be followed by any person claiming property pursuant to § 983(a)(2)(A). Of particular significance here is the requirement of § 983(a)(2)(B) that a claim must be filed "not later than the deadline set forth in a personal notice letter." 18 U.S.C.A. § 983(a)(2)(B) (West Supp. 2006). After detailing the procedures a claimant must follow for the return of property, the statute then sets forth the options for the Government: either initiate the judicial process or release the property. 18 U.S.C.A. § 983(a)(3) (West Supp. 2006).

When viewing § 983 as a whole, it appears to the Court that Congress intended for the seizing agency to have, at a minimum, 60 days and, at a maximum, 90 days within which to evaluate the seizure and determine whether to pursue it nonjudicially. It does not appear to the Court that Congress intended for a potential claimant to have the power to shorten the agency's initial review period by filing a claim for the property before receipt of the formal notice of the agency's intention to seek forfeiture. This conclusion–that Congress intended for the sending of notice to trigger the right to file a claim–is supported by the use of the terms "nonjudicial civil forfeiture proceeding" and "appropriate official" in § 983(a)(2)(A). The agency's act of sending the appropriate notice is what begins the nonjudicial civil forfeiture proceeding. Moreover, the notice is the means by which the "appropriate official" with whom the claim is to be filed is identified to the potential claimant.

It seems unlikely to the Court that Congress intended for a claimant, such as Ramirez here, to begin the claim process by presenting a claim to the seizing agent, before formal notice of the initiation of forfeiture is provided. It is more reasonable to assume that Congress intended to allow the agency an opportunity to process the seizure, and confirm with a written notice that forfeiture would be pursued, before being subjected to a claim for the return of the property. It is true, as Ramirez notes, that one of the purposes of CAFRA was to create a system whereby owners would be able to redeem their property more quickly. However, Congress elected to speed the process up by imposing the 60- and 90-day notice deadlines on a seizing agency. Ramirez has offered nothing which persuades the Court that Congress intended for claimants to unilaterally alter the agency's reviewing period.

In view of the foregoing, the Court concludes that Ramirez's claim, sent to Agent Greco on September 17, 2004, did not trigger the 90-day filing period for the filing of a judicial complaint. To the contrary, the Court finds that the relevant notice in this case was mailed on December 1, 2004, within 90 days of the date on which the property was turned over to DEA by the State law enforcement agency,[5] and that the 90-day period for filing the judicial complaint was not triggered until December 27, 2004, when the Government received Ramirez's letter dated December 22, 2004, in which he had detailed his previous attempts to begin the claim process. As such, the Government's filing of the judicial forfeiture complaint on March 22, 2005, was timely, and the Motion for Summary Judgment is denied.

---

[5] Ramirez does not appear to contend that the DEA was the seizing agency, or that the 60-day notice period would apply in this case.

### C. Motion to Dismiss

Having concluded that the Government's complaint for forfeiture was timely, the Court will next discuss Ramirez's Motion to Dismiss. The Motion to Dismiss appears to conflate two distinct issues related to the Government's probable cause showing: (1) whether the seizure of the currency was itself lawful, i.e., whether Deputy Smith had sufficient cause to initiate the traffic stop and conduct the subsequent search of the vehicle, and (2) whether the Government had probable cause at the time of the seizure to believe that the currency seized was connected to a criminal offense. In his Motion to Dismiss Ramirez contends that dismissal is appropriate because the Government lacked probable cause to seize the currency. (Mot. Dismiss at 4.) Ramirez also maintains that his Motion "challenges [the Government's] probable cause for the initial seizure" of his currency. (Reply at 2.) Thus, the Court will first consider Ramirez's challenge to the stop and search of his vehicle and subsequent seizure of the currency.

### 1. Whether the Seizure of the Currency was Valid

The seizure and subsequent civil forfeiture of property following a warrantless stop and search implicates the Fourth Amendment's probable cause requirement.[6] *See* One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S. Ct. 1246 (1965)

---

[6] Because a claimant in a civil judicial forfeiture proceeding may bring a probable cause challenge to the seizure of his property, the Court finds misleading a statement made by the United States Court of Appeals for the Eleventh Circuit in United States v. $242,484.00, 389 F.3d 1149 (11th Cir. 2004) (*en banc*). There, the court stated that under the version of 21 U.S.C.A. § 881(a)(6) in effect after August 23, 2000, "probable cause is no longer a central issue in forfeiture proceedings." Id. at 1151. As will be discussed in more detail in this Order, probable cause is no longer a cental issue at the pleading stage of a judicial forfeiture proceeding. Probable cause continues to play a critical role at the initial seizure stage.

(holding that the Fourth Amendment is applicable to forfeiture proceedings). The requirements of the Fourth Amendment are restated in CAFRA's statutory framework, which requires that seizures be made pursuant to a warrant or that seizures be based upon probable cause and pursuant to a lawful arrest or search. 18 U.S.C.A. § 981(b)(2)(B) (West Supp. 2006). Additionally, CAFRA requires that property transferred to the Federal agency must have been lawfully seized by a State or local law enforcement agency. 18 U.S.C.A. § 981(b)(2)(C) (West Supp. 2006). Thus, Ramirez may challenge the legality of the seizure of his currency much like a defendant in a criminal case who brings a motion to suppress. *See, e.g.,* United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida, 363 F.3d 1099 (11th Cir. 2004) (claimant in civil forfeiture proceeding filed motion to suppress evidence obtained during search of house). *See also* United States v. 4,432 Mastercases of Cigarettes, ____ F.3d ____, 2006 WL 1511773 (9th Cir. 2006) (civil forfeiture claimant filed motion to suppress cigarettes seized during search of storage area conducted without a warrant); United States v. $99,990 in United States Currency, No. 01-5685, 2003 WL 21698849 (6th Cir. July 17, 2003) (unpublished opinion) (civil forfeiture claimant filed motion to suppress challenging searches of motel room and car resulting in seizures of currency).

Ramirez has not filed a motion to suppress, however; instead, this challenge has been brought pursuant to a Motion to Dismiss. As discussed in greater detail below, the standard at the Motion to Dismiss stage is whether the complaint satisfies the requirements of Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. The standard on a motion to suppress is much different: "Upon a motion to suppress evidence garnered through

a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983). *See also* Rogers v. United States, 330 F.2d 535, 542-43 (5th Cir. 1964) (noting that while the moving party generally has the burden of persuasion and the burden of producing evidence, in the absence of a warrant the prosecutor must come forward with evidence of probable cause).

Ramirez's Motion attempts to challenge the legitimacy of the seizure of the currency following the initial stop of his vehicle. Such a challenge cannot be resolved on face of the complaint, in the context of a Motion to Dismiss. Rather, the Government, which would carry the burden of establishing the reasonableness of the search and seizure, should have the opportunity to respond to the challenge with the presentation of evidence, at a hearing. Therefore, insofar as Ramirez's Motion to Dismiss raises challenges to the legitimacy of the search following the stop and subsequent seizure of the property, the Motion is denied. Ramirez may file a motion to suppress should he so desire.

### 2. Whether the Proper Connection Exists Between the Currency and Criminal Activity.

While contending that "the Claimant's motion to dismiss challenges the Plaintiff's probable cause for the initial seizure of the Claimant's monies," as discussed above, Ramirez also contends there "remains no probable cause substantially connecting the Claimant's monies to the sale or purchase of controlled substances." (Reply to Gov't's Opp'n Mot. Dismiss at 2, 3.) Therefore, the Court will also address whether Ramirez's Motion to Dismiss should be granted because the Government has failed to demonstrate the proper connection between the

currency and criminal activity.

As noted previously, § 983 places the burden of proof on the Government in a civil forfeiture proceeding "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C.A. § 983(c)(1)(West Supp. 2006). Here, the Government contends the seized currency "constitutes money furnished or intended to be furnished in exchange for a controlled substance, in violation of Title II of the Controlled Substances Act" or "constitutes proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C.A. § 881(a)(6)." (Compl. ¶ 16.) Where, as here, the "Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," § 983 also requires the Government to "establish that there was a substantial connection between the property and the offense." 18 U.S.C.A. § 983(c)(3) (West Supp. 2006). However, the Government need not satisfy the burden imposed by § 983(c)(3) at the initial pleading stage.

Of particular significance to this case is the following provision: "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C.A. § 983(a)(3)(D) (West Supp. 2006). Since its enactment, courts have attempted to square this provision with the notice pleading requirements of Rule 8(c) of the Federal Rules of Civil Procedure and Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which is applicable to in rem actions such as this one. *See* 18 U.S.C.A. § 983(a)(3)(A) (West Supp. 2006) (requiring the Government to "file a complaint for forfeiture in the manner set forth in

the Supplemental Rules for Certain Admiralty and Maritime Claims"). Rule E(2)(a) directs as follows:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Fed. R. Civ. P., Supp. R. E(2)(a).

Prior to the enactment of CAFRA, in order to avoid dismissal, a civil forfeiture complaint was required to allege sufficient facts to support a reasonable belief that the government could demonstrate probable cause for forfeiture at trial. *See, e.g.,* United States v. $38,000 in United States Currency, 816 F.2d 1538, 1548 (11th Cir. 1987). In 2002, however, the United States Court of Appeals for the Fourth Circuit concluded that the enactment of CAFRA had served to eliminate the probable cause pleading requirement, stating:

> In light of CAFRA's change in the burden of proof, it is a bit awkward to say now that Rule E(2)(a) requires the complaint to allege facts sufficient to support a reasonable belief that the government can establish probable cause for forfeiture at trial. We therefore decline to adopt this interpretation of Rule E(2)(a).

United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002).[7] Instead, the Fourth Circuit adopted as a "general standard" the requirement that a complaint brought under Rule E(2)(a) "must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture." Id.

---

[7] The Eleventh Circuit, in dicta, seemingly intended to express a similar sentiment, noting that "probable cause is no longer a central issue in forfeiture proceedings." United States v. $242,484.00, 389 F.3d 1149, 1151 (11th Cir. 2004).

16

Some courts considering this issue have followed the approach of the Fourth Circuit in Mondragon and have concluded that Rule E(2)(a) imposes a more stringent pleading requirement on the Government than it would otherwise have under Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.,*, United States v. $49,000 Currency, 330 F.3d 371, 376 n.8 (5th Cir. 2003) (adopting Mondragon standard and requiring Government to "allege facts supporting a reasonable belief that it will be able to bear its burden at trial").

More recently, the First Circuit, like the Fourth Circuit, concluded that "the government no longer must plead facts sufficient to establish probable cause to forfeit." United States v. Lopez-Burgos, 435 F.3d 1, 2 (1st Cir. 2006). However, as to the standard the Government must meet at the initial pleading stage, the First Circuit said only this: "it need only satisfy Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims." Id. (citing 18 U.S.C.A. § 983(a)(3)(A)). The result in Lopez-Burgos, suggests, therefore, that on motion to dismiss a court need only consider whether the government has pleaded facts sufficient to satisfy the requirements of Rule E(2)(a).

After consideration of the statute and related cases, the Court agrees with the First Circuit in Lopez-Burgos and concludes that the complaint in a civil judicial forfeiture need only satisfy Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. In this Court's estimation, the requirement imposed by the Fourth Circuit in Mondragon–that the complaint allege sufficient facts to support a reasonable belief that the property is subject to forfeiture–imposes an additional pleading requirement on the Government that is contrary to the dictates of CAFRA. The only pleading requirement imposed by CAFRA is that the

17

Government file a complaint in the manner set forth in Rule E(2)(a).  The statute expressly provides that the government may use evidence gathered after the filing of the complaint to establish the forfeiture, 18 U.S.C.A. § 983(c)(2) (West Supp. 2006), and prohibits dismissal of the complaint even in the absence of sufficient evidence to establish the forfeitability of the property at the time of the filing of the complaint.  18 U.S.C.A. § 983(a)(3)(D) (West Supp. 2006).  Therefore, it is inconsistent with the statute to also require the Government to allege in the complaint sufficient facts to establish that the property is subject to forfeiture.  Accordingly, in considering Ramirez's Motion to Dismiss, the Court will determine only whether the complaint states "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  Fed. R. Civ. P., Supp. R. E(2)(a).

Viewing the facts of the complaint under the Rule E(2)(a) standard, it is clear that the complaint is sufficient to withstand dismissal.  The allegations are that on September 15, 2004, a Lowndes County, Georgia, sheriff's deputy stopped Ramirez's vehicle for a traffic infraction; asked Ramirez and his passenger questions about their trip; asked for and received consent to search; during the course of the search observed a large amount of currency; and subsequently seized the currency.[8]  (Compl. ¶¶ 9-13.)  The DEA thereafter adopted the seizure from the

---

[8] The complaint states that the currency was seized on May 28, 2004. (Compl. ¶ 4.)  Obviously, the date of the seizure given in the complaint is wrong, since the stop of the vehicle did not occur until September 15, 2004.  However, this error is not such as to cause the complaint to be so deficient as to warrant dismissal.

Lowndes County Sheriff's Department. (Compl. ¶ 7.)

The foregoing information is sufficient to enable Ramirez "to commence an investigation of the facts and to frame a responsive pleading." Given that this standard is all that is required of a civil judicial forfeiture complaint, the complaint is sufficient to withstand a motion to dismiss. Therefore, insofar as the Motion to Dismiss seeks dismissal for lack of probable cause connecting the currency to the sale or purchase of controlled substances, the Motion is denied.[9]

## IV. CONCLUSION

The Motion to Dismiss [doc 8] is denied; the Motion for Summary Judgment [doc 9] is denied.[10] The stay put in place by Order entered October 24, 2005, is hereby lifted. The parties are directed to confer within 30 days of the entry of this Order and submit a proposed discovery plan within 45 days of the date of entry of this Order. The proposed discovery plan should comply with the terms of the Rules 16 and 26 Order entered on September 28, 2005.

**SO ORDERED**, this the 16th day of June, 2006.


                                                **s/    Hugh Lawson**
                                                **HUGH LAWSON, JUDGE**

---

[9] In view of CAFRA's changes in the procedural requirements, as well as the evidentiary burdens placed on the Government by CAFRA, a challenge to the sufficiency of the evidence connecting the currency to a crime might more properly be brought after discovery, on motion for summary judgment.

[10] Because Ramirez elected to file a Motion to Dismiss in lieu of filing an answer, he is encouraged to consult the applicable rules and to ensure that a responsive pleading, if such is required, is timely filed.

mls